(No. 20769.—

HENRY I. GREEN, Plaintiff in Error, *vs.* THE ASHLAND SIXTY-THIRD STATE BANK, Defendant in Error.

*Opinion filed October 23, 1931—Rehearing denied Dec. 4, 1931.*

KIRKLAND, FLEMING, GREEN & MARTIN, and ORIS BARTH, (JOSEPH B. FLEMING, JAY FRED REEVE, and JOSEPH H. PLECK, of counsel,) for plaintiff in error.

DENEEN, HEALY & LEE, (HARRY W. LIPPINCOTT, and DONALD N. SCHAEFFER, of counsel,) for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

This cause is here on *certiorari* to the Appellate Court for the First District on petition of Henry I. Green, plaintiff in error, against the Ashland Sixty-third State Bank, defendant in error. The plaintiff in error will be designated hereafter as petitioner and the defendant in error as respondent.

Petitioner commenced a suit in the superior court of Cook county against respondent based on a contract in writing as follows:

"To E. A. Curtis, Pres. Ashland & 63rd
    State Bank, Chicago

"Please credit acct. of Grant Park State Bank with $25,000 per deposit of U. S. bonds mentioned below. 10/13/25.

ANDREW RUSSEL."

"CHICAGO, ILLINOIS, *October 13, 1925.*

"This is to certify per instructions above that Andrew Russel has this day deposited with the Ashland & 63rd State Bank, of Chicago, Illinois, twenty-five thousand ($25,000) dollars principal amount of bonds of the United States of America, bearing interest at three and one-half per cent (3½%) per annum as evidenced by interest coupons thereto attached; that pursuant to said deposit credit has been given in said bank to the amount of $25,000 to the account of the Grant Park State Bank of Grant Park, Illinois, which said credit is to remain and be maintained accordingly for a period of seven (7) months from this date, unless during said period said bonds are withdrawn as hereinafter provided.

"It is understood and the undersigned therefore hereby agrees that if at any time within the period of seven (7) months from this date said Andrew Russel or the assignee of his rights hereunder shall so request, then in such event the said United States government bonds, with the coupons thereto attached, shall be promptly returned and delivered to the said Andrew Russel, or to such person, persons or corporation as the said Andrew Russel may designate, and the principal amount thereof charged against the account of the said Grant Park State Bank of Grant Park, Illinois; and any assignment or transfer by the said Andrew Russel of his rights or interests hereunder or in the property aforesaid, shall operate and be construed as a designation by him of the person, persons or corporation to whom such assignment or transfer shall have been made. ASHLAND SIXTY-THIRD STATE BANK,
                By E. A. Curtis, *President.*"

The declaration consisted of counts on this contract, in which was alleged, among other things, that on October 15, 1925, Russel assigned to petitioner all his right, title and interest in the bonds mentioned in the contract and designated petitioner as the person entitled to demand and receive the bonds deposited with respondent; that demand was made on respondent therefor on April 26, 1926, and that it refused to deliver the same, with resultant liability to petitioner therefrom. The declaration also contained the common counts. An affidavit of claim made by petitioner's agent was filed with the declaration, which was later supplemented by an affidavit of petitioner. Respondent filed pleas of the general issue that the promise in the contract was beyond the corporate powers of respondent, was *ultra vires* and void; that E. A. Curtis had no authority to enter into the contract on behalf of respondent; that the promise was without consideration; that the promise in the declaration mentioned and the deposit of the $25,000 of Liberty bonds, upon consideration of the respondent extending and giving credit to the Grant Park State Bank, which credit was to remain and be maintained for a period of seven months from the date of the agreement, was done solely for the purpose of establishing and maintaining a fictitious credit to bolster up the credit-standing of the Grant Park State Bank and to make it appear that said bank had a credit with respondent to the extent of $25,000, whereas in truth and reality no such actual credit existed, and that the Liberty bonds of the alleged value of $25,000 mentioned in the declaration were deposited by Andrew Russel in consideration of respondent extending credit to the Grant Park State Bank in the amount of $25,000; that in consideration of the deposit by Russel respondent did extend credit in the sum of $25,000 to the Grant Park State Bank, which credit was used and exhausted by said bank, no part of which has ever been replenished or returned to respondent by said bank, and that

the credit of $25,000 was used and exhausted by said bank prior to any demand being made by Russel or his assignee, or anyone else, for the return of the bonds.

A jury trial resulted in a judgment based on a directed verdict for petitioner for $29,326.46, against respondent. Respondent appealed to the Appellate Court for the First District, which reversed the judgment of the superior court without remanding and made a finding of fact, finding, among other things, "that defendant bank accepted said deposit and made said credit as directed, and that said credit was used by the Grant Park State Bank and has not been re-paid; that under the terms of the agreement the bonds were to be returned to plaintiff's assignor, or his assignee, upon the contingency that said credit was not used or was re-paid; that said contingency has not occurred; that plaintiff has not alleged in his declaration that he, as assignee, is the owner in good faith of the cause of action or verified his declaration, as required by section 18 of the Practice act, and for that reason also he may not maintain this suit."

Respondent urges that the contract in question was without consideration and therefore void. While it is true that a contract, to be binding, must be based upon a consideration, the rule is well settled that any act which is of benefit to one party or a disadvantage to the other constitutes a sufficient consideration to support a contract. (*Anderson* v. *Bills,* 335 Ill. 524; *Buchanan* v. *International Bank,* 78 id. 500; *Burch* v. *Hubbard,* 48 id. 164.) The deposit of the bonds with respondent was a sufficient consideration for the promise contained in the contract.

Without passing upon petitioner's claim that the affidavit of his agent and petitioner's supplemental affidavit were a sufficient compliance with section 18 of the Practice act if such compliance were required, suffice it to say that respondent by its contract agreed that at any time within seven months, upon the request of Russel or the

assignee of Russel's right under the contract, it would promptly return and deliver the bonds and attached coupons to Russel or to such person as Russel might designate, and that any assignment or transfer of Russel's right should operate and be construed as a designation by him of the person to whom such assignment was made; that prior to the commencement of the suit, and within seven months of the execution of the contract, Russel assigned all his interest to petitioner and designated him as the person entitled to receive the bonds; that petitioner accepted the assignment and that respondent had notice thereof; that petitioner demanded the delivery of the bonds and that respondent refused delivery, and that therefore respondent's resultant liability, if any, was a direct contractual liability to petitioner, to which section 18 of the Practice act has no application. It has been settled by repeated decisions of this court that in case of simple contracts the person for whose benefit a promise is made may maintain an action in his own name upon it although the consideration does not move from him. *Lawrence* v. *Oglesby,* 178 Ill. 122; *Commercial Nat. Bank* v. *Kirkwood,* 172 id. 563; *Snell* v. *Ives,* 85 id. 279; *Steele* v. *Clark,* 77 id. 471; *Eddy* v. *Roberts,* 17 id. 505; *Chicago Title and Trust Co.* v. *Central Trust Co.* 312 id. 396.

Section 1 of the Banking act (Smith's Stat. 1929, chap. 16½, par. 1,) provides that banks may be organized to receive deposits, loan money and do a general banking business. Banks are authorized to receive special as well as general deposits, and when such special deposits are received the bank is bound to carry out the terms of the deposit for a special purpose. Where a deposit is made in a bank and the identical property deposited is to be returned to the depositor and not the equivalent thereof, the deposit will be special and the bank will have no authority to use the money in its business, and it is its duty to safely keep and return the identical deposit to the depositor.

(*People* v. *Farmers State and Savings Bank,* 338 Ill. 134; *American Exchange Bank* v. *Loretta Gold and Silver Mining Co.* 165 id. 103; *Mutual Accident Ass'n* v. *Jacobs,* 141 id. 261.) The receipt of the special deposit of the bonds being within the corporate powers of respondent and it having converted the bonds to its own use, the defense of *ultra vires* cannot be sustained in this case. *National Home Building Ass'n* v. *Home Savings Bank,* 181 Ill. 35.

The president of a corporation, by virtue of his office, is the business head of the corporation, and as a general rule any contract pertaining to corporate affairs within its general powers will, when executed by the president and in the absence of proof to the contrary, be presumed to have been executed by authority of the corporation as one of the powers incident to his office. (*Bloom* v. *Vehon Co.* 341 Ill. 200.) The public is not bound to inquire into the special instructions which the officers or servants of a bank may have received as to the manner in which they shall discharge their duties. This is a matter solely between the employer and the employed. The general rule is that the by-laws of a corporation are binding upon none but its members and officers. (*Ward* v. *Johnson,* 95 Ill. 215; *Munn* v. *Burch,* 25 id. 35.) E. A. Curtis was known by Russel and petitioner to be the president of respondent. He held himself out to them as authorized to sign the contract on behalf of respondent. He was consulted as to the terms of the contract. It was submitted to a representative of respondent and changes made therein to meet the wishes of such representative. After being couched in terms said to be satisfactory to Curtis it was sent to him for his signature. He signed it and returned it, together with a note of instructions, to Russel and petitioner by his son, Donald Curtis, and in accordance with the instructions petitioner's bonds were delivered by Russel and petitioner to Donald Curtis, who in turn delivered them to the personal possession of E. A. Curtis, respondent's president, and

he, with a full knowledge of all the provisions of the contract, personally handed the bonds to respondent's cashier. There is no evidence that the president had any interest in the matter adverse to respondent. Acceptance of the deposit with full knowledge of the conditions attached thereto, the conversion of the bonds and failure to return them on demand, estop respondent from claiming that the contract made by its president was without authority.

It is intimated that this deposit was made for an illegal purpose. The burden of proving this charge rested on respondent, and while E. A. Curtis was living at the time of the trial, as shown by the record, neither he, Vern Curtis nor Russel was called as a witness to testify with reference thereto, nor as to the previous financial dealings between respondent and the Grant Park Bank, nor as to the status of the accounts between the two banks at that time, nor as to any of the circumstances within their knowledge which might throw light upon the reasons for the making of the contract in question and their situation at the time, and so be of assistance to us in construing the contract.

The Appellate Court found that under the terms of the agreement the bonds were to be returned to petitioner's assignor or his assignee upon the contingency that the credit was not used or was re-paid, and that said contingency had not occurred. The contract is not susceptible of that construction. In plain language it states that pursuant to the deposit made by Russel a $25,000 credit has been given to the Grant Park State Bank and that credit to that extent shall continue for seven months unless the bonds are sooner withdrawn. Permission to withdraw them at any time was given to Russel or his assignee, and in the event of a withdrawal the amount of the bonds shall be charged against the account of the Grant Park State Bank. The contract does not require the account of said bank to have in it a sum equal to or in excess of the amount of the bonds as a condition precedent to withdrawal of the bonds. The only

provision is that when the bonds are withdrawn a charge against the account shall be made in an amount equal to the bonds. Russel and his assignee had no control over the account but the respondent bank did have supervision over it, and with knowledge of the contract provisions it could have protected itself against the possibility of a bond withdrawal while there was insufficient money in the account to meet a charge off of the bonds. If it suffered a loss because it did not so protect itself it cannot put the loss upon Russel or his assignee.

In construing a contract effect will be given, if possible, to each clause, phrase and word used in the contract, as it is presumed that the parties meant something by the use of the particular language used by them. (*Weger* v. *Robinson Nash Motor Co.* 340 Ill. 81.) While it is the general rule that in construing a contract it is proper for the court to take into consideration the surrounding circumstances, this does not give a court the right, by construction, to establish a different contract from that expressed in the written agreement. If a written contract purports on its face to be a complete expression of the whole agreement it is to be presumed that the parties introduced into it every material item and term, and in construing it the court will not add thereto another term about which the agreement is silent. (*Sterling-Midland Coal Co.* v. *Coal Co.* 334 Ill. 281; *Armstrong Paint Works* v. *Can Co.* 301 id. 102.) No words can be added to or taken from an instrument and thereby change the plain meaning of the parties as expressed therein. (*Stevens* v. *Felman,* 338 Ill. 391.) The object of construction is to ascertain the intention which the parties have expressed in the language of the contract, and where there is no ambiguity in the terms used the instrument itself is the only criterion of the intention of the parties. (*McCormick* v. *Sanford,* 318 Ill. 544.) There is no provision in the contract that "the bonds were to be returned to plaintiff's assignor or his assignee

upon the contingency that said credit was not used or was re-paid," but, on the contrary, the contract in plain and unambiguous terms provided "that if at any time within the period of seven months from this date said Andrew Russel or the assignee of his rights hereunder shall so request, then in such event the said United States government bonds, with the coupons thereto attached, shall be promptly returned and delivered to the said Andrew Russel, or to such person, persons or corporation as the said Andrew Russel may designate, and the principal amount thereof charged against the account of the said Grant Park State Bank of Grant Park, Illinois." The motives and intentions of the parties can only be known from the writing to which the contract is reduced, and no assumption which is contrary to the language used therein can be based upon any external consideration. (*Emerich Outfitting Co.* v. *Siegel, Cooper & Co.* 237 Ill. 610.) The intention must be determined from the language used in the instrument and not from any surmise that the parties used the language to express an intention or meaning they had in mind but failed to express, and if they have overlooked a condition which they would perhaps have provided for if it had occurred to them, the court cannot guess at the provision they would probably have made and by construction read it into the instrument on the presumption that they would naturally have made such provision if they had thought of it. (*LaRocque* v. *Martin,* 344 Ill. 522; *Foss* v. *State Bank and Trust Co.* 343 id. 94.) If the words of a contract are plain and unambiguous the contract must be so construed as to give effect to the plain and obvious import of the language used. (*Bearss* v. *Ford,* 108 Ill. 16.) When the parties are competent to contract, with the wisdom or folly of their contracts, made for a consideration and without fraud, courts of law have no concern. (*Florida Ass'n* v: *Stevens,* 61 Fla. 508; *Mizell Live Stock Co.* v. *McCaskill Co.* 59 id. 322.) One who contracts cannot be relieved

of the obligation of his contract, which binds him to perform his agreement, without the consent of the other party, and he has no right to impose a condition not provided for in the contract itself. (*Thomson* v. *Thomson,* 315 Ill. 521.) Respondent for a consideration, and without fraud, agreed to deliver all the bonds, upon demand, within seven months, to the person designated by Russel. It failed to perform its undertaking without any legal excuse, and the superior court of Cook county properly directed the verdict for the plaintiff and rendered judgment thereon.

The judgment of the Appellate Court is reversed and that of the superior court affirmed.

*Appellate Court reversed.*
*Superior court affirmed.*